AUSA Tyler Murray (312) 353-7846

(REV.5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT

<u>NORTHERN</u> DISTRICT OF <u>ILLINOIS, EASTERN DIVISION</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| v.    KC | |
| **MILES HUNTER** | **CASE NUMBER:** |

FILED
11-27-07
NOV 2 7 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CASE NUMBER:    777

07CR    777

MAGISTRATE JUDGE COLE

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>December 21, 2004,</u> in <u>Cook</u> County, in the <u>Northern</u> District of <u>Illinois,</u> defendant

knowingly and intentionally distributed a controlled substance, namely, fifty grams or more of a mixture and substance containing cocaine base, in the form of "crack" cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title <u>21</u> United States Code, Section <u>841(a)(1)</u>.

I further state that I am a(n) <u>Federal Bureau of Investigation Agent</u> and that this complaint is based on the following facts:

Official Title

See Attached Affidavit.

Continued on the attached sheet and made a part hereof: <u>X</u> Yes _____ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

November 27, 2007 _____ at    Chicago, Illinois
Date                                         City and State

Magistrate Judge Jeffrey Cole _____
Name & Title of Judicial Officer

Signature of Judicial Officer

| State of Illinois | ) | | **UNDER SEAL** |
|---|---|---|---|
| | ) SS | | |
| County of Cook | ) | | |

## AFFIDAVIT

I, Holly Barrile, being first duly sworn on oath, depose and state as follows:

### Background of Affiant

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since 1996.  In connection with my FBI duties, I investigate criminal violations of the federal narcotic laws, including but not limited to 21 U.S.C. §§ 841, 843, and 846.  I have also received specialized training in the enforcement of laws concerning the activities of narcotic traffickers.

2.    The information set forth in this affidavit is based on my own participation in this investigation, my review of documents and reports related to this investigation, information conveyed to me by other local, state, and federal law enforcement officers, and information provided by cooperating witnesses.  Because this affidavit is made for the limited purpose of establishing probable cause in support of the attached criminal complaint against MILES HUNTER, also known as "G-Miles" and "Miles Driver," it does not contain everything that I or other law enforcement officers know about HUNTER or the events described herein.

### Information Provided by a Cooperating Witness

3.    Some of the information contained in this affidavit has been provided by a cooperating witness ("CW").  CW has assisted the FBI in ongoing criminal investigations and has cooperated for money and has been reimbursed for expenses.  The CW has a previous felony

1

conviction for robbery. CW is a high ranking member of the Black P-Stone Nation ("BPSN"). CW has identified HUNTER as a high ranking BPSN member responsible for the control of drug distribution and gang activity in an area on the South Side of Chicago controlled by the BPSN.

4.    The information provided by the CW in this affidavit has been corroborated by law enforcement officers whenever possible by, among other things, the use of electronic recording devices and physical surveillance. In the paragraphs below describing some of the consensual recordings, I have included my understanding or the understanding of other law enforcement officers of the reported conversations.

5.    Between December 2003 and January 2005, CW made 4 controlled purchases of controlled substances from HUNTER: a December 12, 2003 purchase of approximately 138 grams of powder cocaine; an October 5, 2004 delivery of a marijuana sample; a December 21, 2004 purchase of approximately 90 grams of cocaine base in the form of crack cocaine; and a January 19, 2005 purchase of approximately 28 grams of cocaine base in the form of crack cocaine. Each of those purchases was recorded and surveilled by law enforcement officers.

### The December 21, 2004 Drug Transaction

6.    On December 21, 2004, law enforcement officers met with CW1 for the purpose of having CW purchase 4.5 ounces (approximately 126 grams) of crack cocaine from HUNTER.

7.    At approximately 1:50 p.m., CW made a consensually recorded phone call to HUNTER. During that call, CW and HUNTER agreed to meet at 839 West 50th Street, Chicago, Illinois. After the phone call, law enforcement officers searched CW's vehicle and person for contraband and/or unrecorded money; none was found.

8.    CW then drove to the area of 839 West 50th Street, where he met with HUNTER.

2

At that location, HUNTER told CW to follow him to a tire shop, which was located in the area of 51st Street and Ashland in Chicago, Illinois. CW was equipped by agents with an audio recording device.

9.     At the tire shop, HUNTER told CW, "When we get back over there, we gotta drive that shit, go over there to her buildin'. You gon' have to sit in the car and keep your eye on me while I run in there and whip that shit up." [I believe that HUNTER was telling CW that after they finished at the tire shop, they would need to drive to Individual A's building, where HUNTER would go inside and cook the crack cocaine and that he wanted CW to stay outside and watch for the police while HUNTER cooked the crack cocaine.] Individual A was also present at the tire shop.

10.     Also at the tire shop, HUNTER told CW that HUNTER needed CW to go purchase "a box of soda" [baking soda to make the crack cocaine] and "some sandwich bags to put it in" [plastic bags for the crack cocaine]. HUNTER also told CW that he would then come with "the work" [the crack cocaine] and "the scale" [to weigh the crack cocaine]. HUNTER also told CW to meet him at HUNTER's "momma's house" after CW obtained the sandwich bags and baking soda.

11.     CW subsequently departed the tire shop and proceeded to a Dollar Store to purchase the baking soda and sandwich bags. After purchasing those items, CW drove to the area of 839 West 50th Street, Chicago, Illinois, which is the location of HUNTER's mother's house.

12.     After meeting up with HUNTER in the area of 839 West 50th Street, CW followed HUNTER and Individual A to 820 West 51st Place, Chicago, Illinois. At that location, CW met with HUNTER, who told CW after seeing the sandwich bags that CW had purchased, "Damn, what the fuck. I need the little bittie ass [U/I] bags."

13.     After that conversation, CW drove back to the Dollar Store, where CW exchanged

3

the sandwich bags for different bags. CW then drove back to 820 West 51st Place, where he met with and gave the plastic bags to HUNTER. CW then returned to CW's car and waited outside 820 West 51st Place.

14.     A little after 4 p.m., CW entered 820 West 51st Place and met with HUNTER and Individual A. During that meeting, HUNTER asked CW whether CW could "take the three and half [ounces of crack cocaine] and come right back and get you another ounce?" HUNTER explained to CW that when he "was cookin' G, and I lost half ounce worth and I said fuck it. But I gave you, I put three ounces and a half. Supposed to be four. But I'mma tell you, I benefit, I give you for waitin'. I give you a ounce and a half for your delay."

15.     CW subsequently paid HUNTER $2500 for the crack cocaine that HUNTER had cooked and left the building. After leaving the building, CW drove to a prearranged meeting location and turned over the crack cocaine to law enforcement officers.

16.     On January 6, 2005, the suspect crack cocaine purchased from HUNTER on December 21, 2004, was examined by the Drug Enforcement Administration's laboratory. The substance tested positive for cocaine base and had a net weight of 90 grams.

17.    I believe that the substance purchased from HUNTER was cocaine base in the form of crack cocaine based on, among other things: (1) my experience as a law enforcement officer, including training on how crack cocaine is made; (2) HUNTER's request that CW purchase baking soda for him to make the crack cocaine; and (3) a visual inspection of the substance itself.


HOLLY BARRILE
SPECIAL AGENT, FEDERAL BUREAU
OF INVESTIGATION


Sworn to and subscribed to before me on
this 27th day of November 2007.


JEFFREY COLE
UNITED STATES MAGISTRATE JUDGE

5